28 C.C.P.A.(Patents)

## In re DAVIDSON.

### Patent Appeal No. 4354.

Court of Customs and Patent Appeals.

Dec. 9, 1940.

Harry C. Alberts, of Chicago, Ill., for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

Appellant brings before us for review the decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner rejecting all the claims of appellant's application for patent "For Heat Treatment of Iron-Carbon Compositions."

Twenty-three claims numbered, respectively, 18 to 24, inclusive, and 26 to 41, inclusive, are involved.

In the oral argument before us appellant suggested claim 23 as being typical. It reads: "23. A method of treating forgings to soften the same which consists in taking the hot forgings directly or as conveniently as possible from the forging press, then introducing them into a furnace previously set at a temperature equivalent to its AC 2 up to and slightly above its AC 3 range; holding same until the temperature is substantially uniform, *then removing them to the room atmosphere to drop the temperature moderately to quickly for a short period but never below 1050° then placing them into a furnace set at 930° to 1050° F. within the temperature range of formation of a soft structure in the material, holding the forgings at this temperature for uniformity,* and then quenching immediately in a liquid bath below 800° F. without reheating." (Italics ours.)

It is claimed by appellant that the limitations of claim 23 above italicized appear, in substance, in each of the other claims, and these comprise the subject matter which has been emphasized before us.

During the prosecution of the application in the Patent Office certain grounds of rejection were applied to some claims which led to their amendment (by permission of the supervisory examiner) in a manner that eliminated such grounds. So (with the exception of claim 32, rejected as being vague and indefinite), the only ground of rejection before us for consideration is that of non-patentability in view of two patent references cited, viz.: Sheldon, 1,854,629, Apr. 19, 1932; Bain et al., 1,924,099, Aug. 29, 1933.

With respect to the Sheldon patent, it may be said at this point that it appears to have been cited solely with respect to a limitation in certain of the claims defining a final step of pickling or quenching in acid and that appellant's brief recites that he "does not rely upon the final step of quenching in an acid as a differentiating feature." So, it is unnecessary to consider further the disclosures of the Sheldon reference.

It is observed that practically all of the appealed claims recite the thought expressed in the introductory paragraph of claim 23, supra, to the effect that appellant's method is one for *softening* the metal treated, and it is the contention of appellant that the Bain et al. patent relates to a method of *hardening* steel and the resulting hardened product, which is "the antithesis of applicant's objective and resultant."

In appellant's specification it is said that his "treatment can be carried out in as short a time as 9 minutes as compared with the usual 6 hours annealing practice of the prior art, although more time will be required depending upon the cross-section and the mass of the steel being treated * * *."

It will be observed that claim 23, supra, after defining the heating process, requires the removal of the metals being treated from the furnace to "the room atmosphere to drop the temperature *moderately to quickly* * * *". (Italics ours.) In other of the claims different phrases are substituted for "moderately to quickly," as, for example, in claim 28, which the board quoted as representative, where the expression is "cooling moderately to rapidly." As has been stated, appellant claims that the thought expressed in such phrases is present in all the appealed claims and his brief before us most frequently uses the phrase "rapidly cooling" or "rapid cooling." Neither of the Patent Office tribunals seem to have made any distinction between the several claims so far as this thought is concerned, nor is it necessary under the view which we take of the case that we do so.

While appellant earnestly contends that there was error on the part of the tribunals below in the construction placed upon *his* application and claims, we do not find any challenge as to the accuracy of the statements of these tribunals defining the disclosure of the Bain et al. patent. This disclosure was stated by the examiner as follows:

"Steel articles are hardened by heating above the critical point for the steel and then cooled rapidly as by quenching in a metal bath or by an air blast to the desired temperature that will produce the structure desired and held at this point until conversion is complete. The article is then cooled in any of the well known ways for example in air, water, or oil. From the curves in Figure 3 with the desired hardness known it can be determined at what temperature the conversion should take place and then from curves in Figure 2 for the same steel the time of conversion or the time for holding at the particular temperature can be determined. The steel article may then be cooled in the desired manner as taught by Bain. If the steel is of different composition than that shown in the curves, then similar curves can be made up in the same way.

"Bain also discloses that the carbon steels transform to pearlite on being held at the temperature of 900°–1200°F. In other words, a steel being heated above the critical and rapidly cooled to a temperature between 900–1200°F. and held at this temperature the steel will become pearlitic or soft. The zones for hardness and softness so produced as described above depend upon the composition and the one zone merges into the other."

The board stated: "The main reference against the claims is the Bain patent. Bain discloses a process for hardening steel. It comprises heating the steel strip in a furnace to a temperature above the critical point. The strip is then passed through a hardening bath. Bain discloses curves in Fig. 3 which indicate the temperature at which conversion of the steel takes place. Fig. 2 shows curves giving the time required for conversion. Bain discloses that carbon steels are transformed to pearlite on being held at 900–1200°F. Hence if the

steel is heated above the critical point and rapidly cooled to a temperature of 900–1200°F. and held at this temperature, the steel will become pearlitic or soft. After the steel has been treated, it is quenched or cooled to ordinary temperature."

The examiner declared: "Applicant has not attempted to show that there is any difference in the method steps recited in the claims and that disclosed by the art. The use of the words quenching or cooling rapidly must be given their normal meaning, and not any peculiar meaning which is, contrary to their normal meaning as understood by those skilled in the art. Applicant is obviously not entitled to a broad construction of his disclosure, while at the same time urging a restricted construction of the art. Bain clearly and distinctly discloses the steps claimed and the principal objection offered by applicant is that he softens, whereas Bain hardens, but this is insufficient to distinguish. Applicant objects to Bain as a hardening process but it is not seen wherein the process or the material treated is substantially different. If different results are obtained, then it is evident that the disclosure does not teach the precise manner of obtaining them. If the process applied to other steels than those referred to in Bain produces different results, it is apparent that applicant neither discloses nor claims the significant distinction. If Bain was misinformed and his teachings are inaccurate, it is incumbent upon applicant to prove this conclusively, and this applicant has failed to do."

In view of appellant's criticism relative to the construction placed upon his disclosure and claims by the tribunals of the Patent Office, it is proper to quote the following from his specification as originally filed on July 5, 1934: "The process of my invention comprises the treatment of steel or its alloys by heating above the Ac2 point, cooling rapidly to about 1000°F., stabilizing the temperature at this level and then quenching. The process may be specifically carried out by heating the steel to a point within the range slightly above Ac2 to above Ac3, quick cooling in air to a temperature of from 900 to 1100°F., stabilizing at this level in another furnace until uniform throughout, and then quenching in oil, acid, brine, water, or lead below 700°F."

It appears that after various rulings while the case was being prosecuted before the examiner in the Patent Office, appellant on October 1, 1937, proposed a number of amendments, including one to the original specification which consisted of a number of paragraphs, the particular paragraph here pertinent reading: "The word 'rapidly' is employed in this disclosure only as a relative expression and not to mean an act of quickly reducing temperature by quenching, but rather to indicate lowering of the temperature relatively faster than in known and usual annealing practices or the reduction in temperature by normal means such as air cooling from the temperature at which by natural sequence total equality of all constituents occur and never near or at its Ac1, 2 or 3 criticals. The word 'stabilize' is intended to define that the pieces should be of uniform temperature when quenched at the preferred temperatures, namely, from 800°F. to 1025°F. It is not intended that the temperature of 800°F. to 1025°F. need be held for any period other than to insure temperature uniformity."

The amendment was accompanied (in addition to the supplemental oath) by an affidavit of applicant relative to various technical matters.

In the letter of the examiner of November 26, 1937, responsive to the amendment, it was said: " * * * The last paragraph of the amendment [that above quoted] * * * attempts to set up a particular definition for the 'rapidly cooling' which is not in accordance with the accepted definition of such words. Applicant cannot now avoid a reference by merely setting up a definition of a word contrary to the accepted meaning of the word. This paragraph is required to be cancelled as without support in the original disclosure. Furthermore the range of 800–1025°F. is not disclosed in the original disclosure recited in the last paragraph.

In the appeal to the board error was assigned as to the examiner's holding, and in his statement, dated May 31, 1938, following the appeal, it was said: "The affidavit of Oct. 1, 1937 was carefully considered but what has been said above can only be reiterated. Applicant by now asserting that he does not want to quench from the critical temperature down to 900 to 1050°F. cannot change the original disclosure. Applicant by changing the definition of a phrase commonly used from one of normal use to one to satisfy his treatment and to produce his result when such was not supported by the original

disclosure is not deemed to have fully pointed out his invention. The mere fact that applicant stated he could also cool slowly as well as rapidly is not deemed to have changed the circumstances as applicant has stated that either method may be used."

Thereafter appellant filed a motion for reconsideration before the examiner and presented therewith an affidavit of his counsel relating to "Austempering" and "Revolutionary Heat Treatment," as set forth in a publication entitled "U. S. Steel News of October 1938." In this affidavit it was asserted that the process defined in the publication "is precisely the same and embodies the identical teaching constituting the primary subject matter of the instant patent application and the claims now on appeal" and that it was set forth in the article that the " 'austempering' process was the result of seven years of research * * *."

From the foregoing it was argued in the affidavit, in substance, that the Bain et al. patent (possessed by the U. S. Steel corporation) did not contain the disclosure of appellant's application since it "would not have required seven years of research to arrive at the same result described in this patent application and claimed therein."

In a supplemental statement the examiner replied to the foregoing as follows: "It is personally known to the Examiner and so considered in the art as shown by the following publications: Davenport: Austempering, published in Heat Treating and Forging, 1937, Vol. 23, Apr. pages 170 and 171; Davenport: Heat Treatment of Steel by Direct Transformation from Austenite, published in Steel, Vol. 100, Mar. 29, page 42. Copies in the U. S. Patent Office—that the 'austempering' process is that covered by Bain patent 1,924,099, Aug. 29, 1933, and relied upon in the instant case as the main reference. The similarity of the 'austempering' process described on page 7, column 2, of the U. S. Steel News of October, 1928, marked Exhibit 1 may also be seen by comparing the description in the U. S. Steel News with the Bain patent. U. S. Steel News recites that the steel is quenched in a bath of molten lead or salt maintained at the desired temperature. Bain in Figure 1 shows this quenching and at page 2, lines 49–51 states that the bath 2 is maintained at the desired temperature. The U. S. Steel News recites that the steel is held in the bath until the transformation is complete. Bain at page 2, lines 85–91 recites the holding in the bath for a time for the entire conversion to take place and in each of the method claims it is recited the holding of the steel at the quench temperature until substantial conversion has taken place. The conversion on transformation has the same meaning."

Upon the point of new matter, the board said: "It is also our view that the portion of the amendment of October 1, 1937, referred to by the examiner contains new matter and as it gives the claims a different scope from the original specification, the claims cannot be allowed for that reason."

We have stated the contentions on behalf of appellant and the holdings of the tribunals of the Patent Office upon what we consider to be the critical point of this controversy with particularity. It is quite clear to us that appellant's disclosure in the application as originally filed does not distinguish in any patentable sense from the disclosure of the Bain et al. patent. This would seem to be conceded by appellant's act in seeking to amend by inserting a definition of "rapidly," and the decision must turn upon his right so to amend. His right to amend depends, as of course, upon whether the amendment involves new matter.

■ It was the contention of appellant before the tribunals below and it is his contention here that "an inventor can be his own lexicographer," and here he contends that it was reversible error for the examiner to require cancellation of his amendatory matter. Various decisions of different courts are cited in which issued patents have been upheld by placing limited constructions upon phrases appearing in claims so as to interpret such claims in the light of the disclosures of the original specification. In other words, claims of issued patents have been interpreted narrowly or broadly in many cases in order to avoid the effect of prior art and sustain the patent. We do not, however, find any case in which it has been permitted an applicant to amend his specification by the insertion therein of matter inconsistent with his original specification under the guise of defining or interpreting a critical term so as to give that term a meaning different from its ordinary meaning to those skilled in the applicable art. That, it appears to us, is what appellant here sought to do by the particular language under discussion.

Upon the surface it would appear from the record that appellant may have made a valuable contribution to an important industrial art, and our approach to his case has not been unsympathetic. We have recognized that the policy of our patent laws has been to favor invention and reward the inventor, but we must also recognize the legal requirement that one claiming an invention is required to define it in terms which distinguish from prior art. Appellant failed to do this in his original application and when he attempted to distinguish by an amendment defining a critical term he offered an amendment which was inconsistent with his original disclosure. Hence, the amendment embraced new matter, as was held below.

The additional ground of vagueness applying solely to the rejection of claim No. 32 requires no discussion since it was also rejected upon the ground of anticipation applicable to all the other claims.

The decision of the board is affirmed.

Affirmed.